UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ASCEND PERFORMANCE MATERIALS | § | CASE NO. 25-90127 |
| HOLDINGS, INC.,[1] | § | |
| | § | (Jointly Administered) |
| Debtor. | § | (Emergency Hearing Requested) |
| | § | |

**DIAMONDBACK WORKS, L.P.'S <u>EMERGENCY</u> MOTION TO COMPEL DEBTORS TO ASSUME OR REJECT CONSTRUCTION CONTRACT AND PROVIDE <u>ADEQUATE ASSURANCE OF PAYMENT</u>**

> **Emergency relief has been requested. Relief is requested not later than 05:00 p.m. (prevailing Central Time) on May 6, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **Once an emergency hearing has been set by the Court, we will provide notice.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoTo platform. Connect via the free GoTo application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's homepage. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

Diamondback Works, L.P. ("Diamondback"), a creditor, states the following in support of this motion (this "<u>Motion</u>"):

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Ascend. The location of Debtor Ascend Performance Materials Holdings Inc.'s principal place of business is 1010 Travis St., Suite 900, Houston, Texas 77002.

**Relief Requested**

1. Diamondback seeks entry of an order, substantially in the form attached hereto (respectively, the "Order"): (a) compelling the Debtors to assume or reject the Contract (as hereinafter defined) within three (3) days of entry of the Order; (b) providing adequate assurance of payment, and (c) directing the Debtors to pay all pre-petition and post-petition amounts due under the Contract (as hereinafter defined).

**Jurisdiction and Venue**

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Order of Reference to Bankruptcy Judges* from the United States District Court for the Southern District of Texas, entered May 24, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Diamondback confirm its consent to entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363, 365(d)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 1075-1 and 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures").

**Procedural Background**

5. The Debtors, together with their non-Debtor affiliates (collectively, "Ascend" or

the "Company"), are one of the largest, fully-integrated producers of nylon, a plastic that is used in everyday essentials, like apparel, carpets, and tires, as well as new technologies, like electric vehicles and solar energy systems.

6. On April 21, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' cases are being jointly administered.

7. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**Grounds for Emergency Relief**

8. An emergency exists because Diamondback only has a few weeks left to complete the construction, and, if the Contract (as hereinafter defined) is not promptly assumed, Diamondback's rights will be harmed and its ability to collect the amount due under the Contract will be adversely affected. Specifically, if relief is not granted, the Debtors will be in a position to obtain full performance under the Contract while only paying a small fraction of the cost. This is not equitable or fair to the rights of Diamondback. Additionally, Diamondback continues to incur significant costs and expenses to laborers and suppliers.

**Factual Background**

9. Diamondback is a general contractor. The Debtors have a facility in Alvin, Texas. The Debtor Ascend Performance Materials Texas, Inc. and Diamondback are parties to that certain Contract for Construction dated May 20, 2024 (the "Contract"). Pursuant to the Contract, Diamondback is acting as general contractor for a construction project at Debtors' facility in Alvin, Texas. On information and belief, the Contract is being funded by the federal government and is

3

subject to the Federal Acquisition Requirements ("FAR"). On information and belief, the federal government is reimbursing the Debtors for the costs of construction. The construction involves the construction of a plant to produce a chemical requested by the federal government.

10.     The Contract provided, inter alia, "If Contractor [Diamondback] performs work for Ascend that is subject to certain contractual requirements imposed by the United States Government, Contractor shall comply with the "Supplier Flowdown Provisions" as described in Exhibit M, Supplier Flowdown Provisions…If the Supplier Flowdown Provisions apply to a Project, then such Supplier Flowdown Provisions shall prevail to the extent a conflict exists between the Contract Documents and the Supplier Flowdown Provisions with respect to that particular Project." Article 2 of Contract.

Exhibit M attached to the Contract provides:

> "Supplier Flowdown Provisions
>
> **APPLICABILITY:**
> The following requirements will be incorporated into your Agreement, as applicable to all Services performed or Materials provided for the Project.
> In the event there are any inconsistencies between the terms of your Agreement and the requirements below, the requirements below shall prevail.
> Supplier shall include the below requirements in all lower-tier agreements with its own subcontractors, as applicable.
>
> **DEFINITIONS:**
> In all cases, the below requirements shall be interpreted to apply to Supplier as necessary to reflect the position of "Supplier" as a "Subcontractor" to Ascend Performance Materials Texas, Inc. (Ascend Texas) and as needed for "Ascend Texas" to meet its obligations to its federal customer. Without limiting the foregoing, unless the context of the applicable requirement states otherwise, the term "Contractor" shall mean "Supplier", the term "Agreement" or "Contract" shall mean this Agreement between Ascend Texas and the Supplier, the term "Subcontractor" shall mean "Supplier's" lower-tier subcontractor(s), and the terms "Government" and "Contracting Officer" shall mean "Ascend Texas" unless the right, authorization, or other action needed by the requirement can only be granted or performed by the federal customer."

The above and foregoing makes it clear that the Federal Government, which shall mean Ascend Texas, is the party to the Contract and, on information and belief, is actually reimbursing the

Debtors for the cost of the work.

11. Diamondback has open invoices, including invoices not yet sent but dated April 23, 2025, in the amount of over $1,903,550.63[2]. The construction is substantially complete and only approximately $300,000 in work is needed to complete the project, which should occur in the next few weeks. While Diamondback has not suspended its performance under the Contract as a result of the automatic stay under Section 362 of the Bankruptcy Code, Diamondback continues to perform work without assurances that it will be paid.

12. Under Section 365(d)(2) of the Bankruptcy Code, the Debtors may assume or reject executory contracts at any time before confirmation of a plan, subject to court approval. However, a non-debtor party may request that the court set a deadline for such decision.

13. Diamondback is being prejudiced by the Debtors' delay in assuming or rejecting the Contract [e.g., incurring ongoing labor and material expenses, ongoing administrative costs, and lien exposure].

14. Courts have found it appropriate to compel assumption or rejection where delay causes hardship to the non-debtor.

15. It is not equitable to require Diamondback to continue performance without assurance that the Contract will be assumed. Otherwise, the Debtors could windfall by requiring Diamondback to complete the project without assuming the Contract and paying the cure costs, and thereafter reject the Contract after receiving all of its benefits. The Debtors would receive the benefits of the Contract without paying the cost.

16. Diamondback believes that the US government reimburses the Debtors for the construction costs as this is a FAR Contract. Under FAR, the funds come from the government,

---

[2] Diamondback intends to file a Mechanic And Materialmen's Lien for amounts owed.

through the debtors, as owners of the Project, to Diamondback. The funds would be protected and the Debtors have no interest in the funds, which Diamondback alleges would be trust funds.

17. Diamondback is uniquely qualified to complete the project, and it would be difficult, if not impossible, to replace it.

18. Diamondback requested that the Debtors assume the contract and pay it as a M&M Lien Claimant/critical vendor. The Debtors have refused to do so. It appears that the Debtors intend to "run out the clock" and then make their decision. It should not be a very difficult business decision for the Debtors to decide to assume the Contract, and receive the benefits of it, including being reimbursed by the federal government.

19. The Debtors have also not even confirmed that Diamondback that it will be paid for post-petition work as an administrative claim.

## Argument

### I. THE COURT SHOULD REQUIRE THE DEBTORS TO IMMEDIATELY ASSUME OR REJECT THE CONTRACT

20. The Debtors should be compelled to immediately assume or reject the Contract. While section 365(d)(2) of the Bankruptcy Code generally allows a debtor until confirmation of a chapter 11 plan to assume or reject executory contracts, it also provides that a court may order a debtor to assume or reject a contract within a shorter time frame. Congress intended that this provision would reduce the uncertainty experienced by counterparties to executory contracts that were "left in doubt concerning their status vis-à-vis the estate." H.R. Rep. No. 95-595, at 348 (1977); *see also In re Mirant Corp.*, 303 B.R. 319, 331 (Bankr. N.D. Tex. 2003) (explaining that if "prompt" assumption or rejection is required for certainty in the movant's business planning, "the court would likely grant such relief").

21. Courts consider a range of factors when determining whether to shorten the period

6

in which the debtor must assume or reject the contract. For example, in *In re Panaco*, this Court considered whether the debtor was paying or performing under the contract, whether the debtor's non-performance could damage the non-debtor party beyond compensation available under the Bankruptcy Code, whether the contract was the debtor's primary asset, and whether the debtor had sufficient time to formulate a plan. *In re Panaco, Inc.*, No. 02–37811, 2002 WL 31990368, at *4-5 (Bankr. S.D. Tex. Dec. 10, 2002) (citing *In re Burger Boys, Inc.* 94 F.3d 755, 761 (2d Cir. 1996)). Courts outside this circuit have held that deciding to shorten the period for assumption or rejection is within the court's discretion and should be based on the particular facts of each case, considering a myriad of factors.[3] *See In re Adelphia Communications Corp.*, 291 B.R. 283, 293; *Theatre Holding Corp.* v. *Mauro*, 681 F.2d 102, 104-05*; see also Dunes Casino and Hotel*, 63 B.R. 939, 949 (D.N.J. 1986) (quoting *In re Midtown Skating Corp.*, 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980)). Importantly, courts examine whether chapter 11 debtors who unreasonably delay their decision to assume or reject an executory contract are acting in good faith, asking whether "prolonging the suspense" will "serve the purposes of chapter 11." *See In re Travelot Co.*, 286 B.R. 462, 469 (Bankr. S.D. Ga. 2002).

22.     The longer the Debtors are permitted to delay a decision on the Contract, the more acute the harm is to Diamondback. At this point, the Debtors are simply keeping Diamondback in limbo, an approach that supports compelling assumption or rejection. *See Adelphia.,* 291 B.R. 283, 296 (noting that a delay of the decision to assume or reject an executory contract that persists "past the short term" is "unfair and inappropriate" as it would keep the contractual counterparty

---

[3] Factors cited by other courts include (i) the nature of the interests at stake; (ii) the balance of the hardships; (iii) the good to be achieved; (iv) the safeguards afforded those litigants; (v) whether the action to be taken supports the purpose of Chapter 11; (vi) the Debtor's failure to or ability to satisfy post-petition obligations; (vii) damage the non-debtor will suffer; (viii) the importance of the contract to the Debtor's business and reorganization; and (ix) whether Debtor has sufficient time to appraise its financial situation and the value of the assets.

in limbo). Diamondback is continuing to incur substantial expenses and costs daily under the Contract without assurance it will be paid.

## Conclusion

23. Cause has been shown for granting the relief requested.

24. Diamondback reserves the right to file a brief and memorandum of law in support of its position.

WHEREFORE, Diamondback requests entry of the Order in substantially the form attached and granting such other and further relief as is just and equitable.

Respectfully submitted this 29th day of April, 2025.

/s/Trent L. Rosenthal
TRENT L. ROSENTHAL
Texas State Bar No. 17282300
Federal Bar No. 129
ROSENTHAL LAW FIRM, PLLC
675 Bering, Suite 150
Houston, Texas 77057
Telephone: (713) 647-8177
Facsimile: (713) 647-8127
Email: trosenthal@rosenthallaw.com

**COUNSEL FOR DIAMONDBACK WORKS, L.P.**

## CERTIFICATE OF ACCUARCY

In accordance with Bankruptcy Local Rule 9013-1(i), the undersigned, an attorney, hereby certifies that the foregoing statements regarding the nature of the emergency are true and accurate to the best of my knowledge.

/s/Trent L. Rosenthal
Trent L. Rosenthal

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the above and foregoing Emergency Motion was served by the electronic case filing system on April 29, 2025 including the Debtors, their counsel, the U.S. Trustee and parties receiving notice by the Court's electronic case filing system.

/s/Trent L. Rosenthal
Trent L. Rosenthal